KENNETH M. SORENSON
United States Attorney
District of Hawaii

JEANNETTE S. GRAVISS
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: jeannette.graviss@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PENITILA FAAMOE, a/k/a "Junta," "JUWS," "John Wick,"<br><br>Defendant. | Case No. CR 26-00116 MWJS<br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO DETAIN |

**<u>UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO DETAIN</u>**

On October 21, 2026, the United States of America moved this Court to detain the defendant pending further judicial proceedings. [ECF 7]. This memorandum is filed in support of the motion to detain.

## Eligibility for a Detention Hearing

1. The defendant is eligible for detention hearing because the defendant is charged with a felony involving the possession of a firearm. *See* 18 U.S.C. § 3142(f)(1)(E).

## Grounds for Detention

### *Nature and Circumstances of the Offense*

2. While the United States Pretrial Services Office does not take into consideration the nature and circumstances of the offense on the issue of detention, Title 18, United States Code, Section 3142(g)(1) requires the Court to consider the nature and circumstances of the offense charged.

3. On May 30, 2026, officers with the Honolulu Police Department observed three vehicles at the Kalihi Street ramp of the H1 East freeway traveling at high rates of speed. The three vehicles, a 2025 Dodge Hornet, a 2003 Honda Accord, and a 2019 Mazda CX-5 appeared to be traveling together. Officers observed the vehicles weaving in and out of traffic during heavy rainfall. All three vehicles then continued east on Kalanianaole Highway and turned left into the

parking lot of Longs Drugs. All three vehicles were stopped by officers for traffic violations.

4. There were five people in the Mazda. The driver of the Mazda did not have a valid driver's license. Officers located a tan Glock pistol on the floor of the front passenger seat with a Glock "switch" that converts the pistol to a fully automatic firearm. The Glock had an obliterated serial number and a high-capacity magazine inserted into the magazine which contained 30 rounds of 9mm ammunition. There was a backpack in the trunk of the Mazda that contained a tan and black Glock style pistol with a high-capacity magazine loaded with two rounds of ammunition.

5. There were five people in the Accord. The driver of the Accord did not have a valid driver's license. Officers located a Glock style semiautomatic pistol with no serial number, a "ghost gun," on the rear floorboard behind the driver's seat. The "ghost gun" had a black barrel and frame with a silver slide. There were two rounds of ammunition in the magazine and one round in the chamber.

6. The defendant was driving the Dodge and there were three passengers. Each of the passengers had opened alcoholic beverages in their possession and they were placed under arrest. There was a Louis Vuitton bag on the floor of the front passenger seat area. A Ruger Redhawk 44 magnum revolver was located inside the bag. There were five rounds of ammunition in the cylinder. The serial number on

the revolver was obliterated. There was a backpack in the trunk of the Dodge and there was a high-capacity drum magazine loaded with 9mm ammunition and an unloaded rifle magazine in the backpack.

7. The defendant's phone was seized and searched pursuant to a search warrant. The following photograph dated May 27, 2026, was on the defendant's device:



8. There were text messages on the defendant's phone regarding the purchase of a revolver on May 20, 2026. The seller sent a photo of the revolver which is depicted below:



9. The photo below depicts the revolver seized from the Dodge:



10. On June 29, 2025, a photograph of the defendant was sent to his cellular telephone. In the photograph, depicted below, the defendant appears to be holding a firearm with a silver slide containing a high-capacity magazine:



*The Weight of the Evidence Against the Defendant*

11. Section 3142(g)(2) requires the Court to consider the weight of the evidence against the defendant. The government submits that the evidence against the defendant is strong.

12. The weight of the evidence against the defendant strongly suggests that he is guilty of the alleged offenses, which is relevant to his motivation to flee.

*The History and Characteristics of the Defendant*

13. Section 3142(g)(3)(A) requires this Court to consider the history and characteristics of the person, including the person's character, physical and mental condition, employment, financial resources, length or residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings.

14. While the defendant appears to have some ties to the community, his past conduct weighs against release to ensure the safety of the community and his

appearance in court as required. This is particularly true because the defendant's ties to the community are related to his role as the leader of Brave Gang. In June 2026, investigators interviewed a self-identified member of Brave Gang who said that the defendant is the head of the gang. Additionally, other cooperating witnesses have identified the defendant as the head of Brave Gang, or "BG" or "Kam IV." The defendant has "BG" tattooed on the side of his neck and "IV" tattooed on his face.

15. On October 21, 2026, at approximately 8:30 a.m. while transporting the defendant to court for his initial appearance, FBI agents observed at least ten men wearing red outside the courthouse. FBI agents were able to identify at least one of the individuals as a known member of Brave Gang. According to court security officers, the group of men inquired about the defendant's court hearing. The docket showed that the matter was sealed, so the men were told that they could come into the courthouse, but they would not be permitted to go into the courtroom. Brave Gang members identify themselves by wearing red.

16. As described in more detail below, the defendant has been charged by Felony Information in the First Circuit, State of Hawaii, with reckless endangering in the first degree for firing the firearm, place to keep a pistol or revolver, and carrying or possessing a loaded firearm on a public highway for a shooting that

occurred on January 23, 2025. At the time the defendant committed the offense, he was under court supervision for unauthorized control of a propelled vehicle.

17. At the time the defendant committed the instant offense, he was out on bond in two separate state cases.

*The Nature and Seriousness of the Danger to the Community*

18. Section 3142(g)(4) provides that the Court shall take into account "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

19. In May 2022, Honolulu Police Department officers responded to a shooting at Thomas Square Park in Honolulu. Three people were shot. Victim 1 and Victim 2 are members of a rival gang and refused to cooperate with the investigation. The defendant, a rapper who goes by the stage name "JUWS," made a YouTube video called "Six Shots" during which he described the shooting, "Ain't no love up in the city, you get shot like [Victim 1]." Additionally, a cooperating source told agents that the defendant confessed to shooting Victim 1, and releasing the song called "Six Shots" in which he described himself shooting "White Boy [Victim 1]".

20. On April 30, 2024, Richie Kony was shot and killed at Kuhio Park Terrace in Kalihi. Ethan Taumua, a member of the Brave Gang, has been charged with murder in the second degree and is in custody awaiting trial. A cooperating

source told investigators that the defendant admitted to being with Taumua at the time of the murder. Another cooperating witness told investigators that Kony was shot because the defendant thought Kony was having a relationship with the defendant's girlfriend. The witness said that the day that Kony was shot and killed, Kony and the defendant had a physical altercation. Later that day, the witness said that the defendant went to the area of Kuhio Park Terrace with five to six friends and they shot up the playground. The witness said that Kony was a member of a rival gang.

21. On January 23, 2025, a 25-year-old male victim was involved in an argument with the defendant in the Kalihi Valley Homes complex. The argument escalated into a physical confrontation. The victim tried to drive away from the area. While the victim was at the intersection of Likelike Highway and Alu Stret, the defendant, who was a passenger in a separate vehicle pulled out a gun and fired three shots at the victim, but missed. The victim reported the shooting to police officers. There were bullet holes in the victim's vehicle and shell casings were recovered in the area of the shooting. The victim identified the defendant as the person who shot at him. The defendant has been charged by Felony Information in the First Circuit, State of Hawaii, with reckless endangering in the first degree for firing the firearm, place to keep a pistol or revolver, and carrying or possessing a

loaded firearm on a public highway. The bullet holes in the driver's door and passenger door of the victim's car are depicted below:




22. On June 30, 2025, a fifteen-year-old boy was beaten in Kalihi Valley Homes. The child was taken to the hospital in critical condition with life threatening wounds. The defendant was identified by a witness as one of the people who participated in the beating.

23. On May 31, 2026, the defendant's cellular telephone was seized, and investigators later obtained a warrant to search the phone. Investigators discovered multiple text conversations on the defendant's phone during which the defendant discussed robbing various game rooms. For example:

a. The defendant texted with a phone number ending in 4869 on May 8, 2025, and they discussed robbing a game room in Halawa Heights:

Faamoe: 10 mins out

4869: Bet.

Faamoe: Where the camera box uce

4869: Fuck idk sole

4869: How u check 4 dat?

Faamoe: No worry I get em

Faamoe: What cashier wrkin

4869: All sick rn I just went out all my money in the machines

4869: The chill one uws. The skinny boy

Faamoe: Me too yesterday 5 bands

4869: Fuck smfh [shaking my fucking head]

4869: Rahjah uws I let u in then yup

4869: sole no shoot me fr [for real] yeah lol

Faamoe: Uce I gotta wack u

Faamoe: Make em look real

4869: Nah sole no need just point the gun to me

Faamoe: Bet

4869: Kus I going look Kaea on the video

4869: Just go up to the kashier room first then point at him

4869: Then point at me after

4869: Tell the kashier put all the money in the bag then point the gun at me till u walk out

4869: I go make like I go walk up to you in the room then just point the gun at me then I go stand still

Faamoe: It's me and [name redacted]

Faamoe: Coming up the hill rn

Faamoe: What the cashier doing ?

Faamoe: Bout to walk to the door rn

The conversation was consistent with having at least one person inside the game room at the time of the robberies. The defendant would also attempt to steal any surveillance cameras from the game rooms to avoid being identified.

b. On March 15, 2026, the defendant had a text conversation with a person using a phone number ending in 5796. The defendant discussed going to rob the game room where 5796 worked. The user of 5796 told Faamoe he/she got in early. Faamoe texted "Boutta come down." The user of 5796 replied, "Yessah". Faamoe then asked, "Still no more nobody ?" – confirming that there were not more people at the game room. Faamoe asked about parking and again confirmed more people had not arrived:

Faamoe: U sure nobody more succas ahh

5796: Yeah bro

Approximately ten minutes later, Faamoe texted the user of 5796 that he would pay him, "break u off".

| | |
|---|---|
| Faamoe: | No worry |
| Faamoe: | I break u off |
| Faamoe: | Remember u dnt know us |
| 5796: | He knows |
| 5796: | I know you |
| Faamoe: | Just say I from mayors [rival gang] |
| Faamoe: | U never know we was gon do that |
| Faamoe: | Just say we from kpt [rival gang] |
| Faamoe: | No say my name |
| Faamoe: | U know better |
| Faamoe: | Keep it smooth I gon break u off |
| 5796: | Yups |

The defendant then texted a picture to another one of his contacts depicting himself holding a large quantity of cash:



The text conversation continued with the user of 5796 regarding whether the defendant would be identified as a participant in the robbery. After some back and forth, the defendant texted: "Lmk if they send out pics", and "If they do end up getting from the other cameras". The user of 5796 asked about getting paid and the defendant texted, "I gon see I had to break off 2 of the boys only had 6 grand [$6,000]". The user of 5796 replied, "8 they said" – "Fr [for real]" – "Those Faka did the numbers saying they lost 8gs [$8,000]". The defendant replied, "Wasn't 8 nigga was 6".

c. On March 30, 2026, the defendant texted: "We go hit the room By Walmart". The conversation continued on April 5, 2026, and the defendant texted: "Lmk when u in How much door man".

24. The defendant has a history of continuing to commit offenses while on supervision so it is the government's position that no condition or combination of

conditions can be put in place to ensure that the defendant will not continue his criminal behavior.

Conclusion

25. The government submits that when considering all the factors outlined in Title 18, United States Code, § 3142(g), the factors weigh heavily in favor of detention. First, there is a preponderance of the evidence no condition or combination of conditions will reasonably assure the defendant's appearance in court. Second, there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.

DATED: October 23, 2026, at Honolulu, Hawaii.

KENNETH M. SORENSON
United States Attorney
District of Hawaii

By */s/ Jeannette S. Graviss*
JEANNETTE S. GRAVISS
Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served via CM-ECF:

Gary Singh
Attorney for Defendant
PENITILA FAAMOE

Served via email

Whitney Nakamura
U.S. PRETRIAL SERVICES
300 Ala Moana Blvd, Rm. 7-222
Honolulu, Hawaii 96850

DATED: October 23, 2025, at Honolulu, Hawaii.

By */s/ Jeannette S. Graviss*
JEANNETTE S. GRAVISS
Assistant U.S. Attorney